# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

CRAIG K. SEACHRIST,

Plaintiff-Appellant/Cross-Appellee,

v.

CARL F. ROUSENBERG, III ET AL.,

Defendants-Appellees/Cross Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case Nos. 19 MO 0001 & 19 MO 0002**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2015-239

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed and Remanded.

---

*Atty. Todd Neuman, Atty. Rick Ashton, Atty. Jeffrey Corcoran*, Allen, Stovall, Neuman, Fisher & Ashton LLP., 17 South High Street, Suite 1220, Columbus, Ohio 43215, for Plaintiff-Appellant/Cross-Appellee, and

*Atty. Peter Lusenhop, Atty. Alycia Broz, Atty. Andrew Guran*, Vorys, Sater, Seymour and Pease LLP., 52 East Gay Street, P.O. Box 1008, Columbus, Ohio 43216-1008, for Defendants-Appellees/Cross Appellants.

March 31, 2020

---

**Donofrio, J.**

{¶1} Plaintiff-appellant/cross-appellee, Craig Seachrist individually and on behalf of CYSSR Land Holdings, LLC (CYSSR), appeals from a Monroe County Common Pleas Court judgment granting summary judgment in favor of defendants-appellees/cross-appellants, Carl Rousenberg, III and Profit Energy, on Seachrist's claims for breach of fiduciary duty, breach of contract, unjust enrichment, conversion, and declaratory judgment and granting summary judgment to Seachrist on Rousenberg's claim for indemnification.

{¶2} CYSSR was formed on July 18, 2002, in order to purchase property for the purpose of leasing the land to Profit Energy (Profit) for oil and gas development and to share in royalties from that development. CYSSR is a limited liability company with five members. The members were chosen based on particular skill sets that each possessed: Roger Claus for his surveying experience; William Reed for his excavation experience; Dick Yoss as legal counsel; Seachrist for his accounting experience; and Rousenberg for his oil and gas development experience. Each member owned a one-fifth interest in CYSSR. The five members adopted the Operating Agreement for CYSSR drafted by Atty. Yoss. Rousenberg was appointed manager of CYSSR. He remained in that position until January 21, 2016.

{¶3} From CYSSR's inception through 2008, it acquired 238 acres of property in Monroe County through five purchases. Each time a purchase was made, Rousenberg identified a parcel of property, negotiated a purchase price, solicited funds and approval from the other members, and made the purchase. Atty. Yoss completed all title work and deed preparation.

{¶4} Rousenberg is also the sole owner of Profit. From 2002 through 2008, CYSSR entered into multiple oil and gas leases with Profit (Initial Leases). Rousenberg, as manager of CYSSR, executed the leases on CYSSR's behalf. Rousenberg did not

seek the consent of the other CYSSR members before entering into the leases with Profit as the Operating Agreement did not require him to do so. All leases were recorded with the Monroe County Recorder. Each of the leases provided for a royalty payment of one-eighth for oil and gas produced, the right for the lease to continue as long as oil and gas continued to be produced, and the right of assignment of the lease. Additionally, each of the leases was a "top-to-bottom" lease, which granted Profit the right to explore for oil and gas from all strata underlying the properties.

**{¶5}** On August 10, 2011, Rousenberg, again as manager of CYSSR, executed three additional leases as to three of the parcels of property making minor modifications and dating the leases back to the dates the original leases were executed (2011 Leases). The modifications corrected the acreage to correspond with the property held by the leases and removed certain restrictions regarding hunting season and timber removal.

**{¶6}** Rousenberg prepared, or supervised the preparation, of each of the leases as Profit's owner/sole shareholder. Rousenberg never circulated the leases to CYSSR's other members or sought their consent before entering into them.

**{¶7}** Profit drilled one or more wells on each of CYSSR's properties. The leases remained in effect at all relevant times as a result of operation of the wells.

**{¶8}** In 2010 or 2011, the oil and gas industry began using new technology that provided access to previously inaccessible strata. As a result of this new technology, HG Energy, LLC (HG) contacted a local oil and gas operator expressing interest in acquiring the rights to drill in the Utica formation underlying thousands of acres in Monroe County. The oil and gas operator contacted Atty. Yoss for assistance in this matter. Atty. Yoss and his client reached an understanding with HG that would allow HG to access portions of the Utica formation controlled by the oil and gas operator. They further agreed that the same opportunities would be made available to all other oil and gas producers in the area sought by HG by way of an Oil and Gas Sublease (Sublease). The Sublease provided that in exchange for certain economic consideration, oil and gas operators and entities holding production rights would grant HG access to explore for and use oil and gas resources in the Utica formation that they controlled. The Sublease also provided that HG would drill a specific number of wells over a specific period of time.

Case No. 19 MO 0001 & 19 MO 0002

{¶9} HG contacted Rousenberg, as Profit's owner, to enter into the Sublease. HG required Profit to submit documentation of its oil and gas leases to HG in order to determine if it was eligible to participate in the Sublease. It was during this time that Rousenberg executed the 2011 Leases.

{¶10} Profit then entered into the Sublease and received the per acre fee set out in the Sublease for the approximately 238 acres it held through the leases with CYSSR. Profit also received an ongoing fractional share of a royalty on production from the Utica strata. HG later wanted to suspend its drilling. The principals behind the Sublease agreed HG could do so in exchange for an additional per-acre payment, an advance payment on the royalty. Profit agreed to these terms.

{¶11} Next, HG conveyed its interest in the Utica formation to American Energy-Utica, LLC. American Energy-Utica wished to adjust the drilling schedule again. Subsequently, the Ratification of Sublease was agreed to by the interested parties. Profit was one of the parties that agreed to the Ratification of Sublease and, in exchange, Profit received a substantial payment for the acreage it held through its leases with CYSSR.

{¶12} American Energy-Utica later became Ascent Resources-Utica, LLC. Defendant Gulfport Energy Corporation claimed an interest in the Utica formation set out in the Sublease through several transactions by Ascent Resources-Utica LLC.

{¶13} Rousenberg did not inform CYSSR's members during any of the preceding transactions that Profit had assigned its rights in the Utica formation to HG. Nor did he inform them of the substantial payments Profit received. CYSSR did not receive any portion of these payments.

{¶14} Seachrist filed this action on August 6, 2015. Seachrist filed a second amended verified complaint on March 22, 2016 against Rousenberg, Profit, and Gulfport Energy Corporation. Seachrist asserted claims for breach of fiduciary duty, breach of contract, unjust enrichment, conversion, and declaratory judgment. Rousenberg filed a cross-claim for indemnification against CYSSR.

{¶15} All parties filed motions for summary judgment. The trial court granted summary judgment in favor of Rousenberg and Profit on all of Seachrist's claims. The court also found that Rousenberg's cross-claim for indemnification was not ripe for adjudication.

**{¶16}** Seachrist filed a timely notice of appeal on February 7, 2019. CYSSR filed a timely notice of appeal on February 13, 2019. Rousenberg and Profit filed a timely notice of cross appeal on February 19, 2019. This court consolidated the appeals. Seachrist is proceeding in this appeal individually and on behalf of CYSSR despite their separate notices of appeal.

**{¶17}** An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

**{¶18}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶19}** With this standard of review in mind, we turn to the parties' assignments of error.

**{¶20}** Seachrist's sole assignment of error states:

> THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS CARL F. ROUSENBERG, III AND PROFIT ENERGY ON THE CLAIMS IN PLAINTIFF'S [sic.] SECOND AMENDED VERIFIED COMPLAINT AND IN ENTERING THE JANUARY 14, 2019 JUDGMENT ENTRY.

**{¶21}** Seachrist first argues a genuine issue of material fact exists as to whether Rousenberg breached his fiduciary duty to CYSSR.

{¶22} Seachrist asserts Rousenberg breached his duty to act in CYSSR's best interest and to refrain from self-dealing. He claims that Profit is not capable of drilling deep, horizontal wells. Thus, CYSSR's members did not contemplate such drilling. Consequently, Seachrist argues, the Initial Leases did not reflect the understanding of the members and were not authorized. (Reed Aff. ¶ 12; Claus Aff. ¶ 12; Seachrist Dep. 27-28, 137). Moreover, Seachrist contends, after learning of the potential deal with HG, Rousenberg was faced with either acting in CYSSR's best interest and ensuring that it received the benefits of the Sublease or acting in Profit's best interest and ensuring that it (and he) received the benefits of the Sublease. By choosing Profit over CYSSR, Seachrist contends Rousenberg breached the duty of loyalty and enjoyed benefits of approximately $900,000.

{¶23} Seachrist notes the trial court found that the Operating Agreement does not place a requirement on the manager to receive approval of the membership to enter into contracts or to carry on CYSSR's business. But he contends that a general grant of authority to a fiduciary does not grant the fiduciary the right to engage in self-dealing. The Operating Agreement cannot override Rousenberg's fiduciary duty. Moreover, Seachrist points out that the Operating Agreement requires that the "manager shall perform all duties in good faith, in a way the manager reasonably believes to be in or not opposed to the company's best interests, and with the care that an ordinarily prudent person in a similar position would use under similar circumstances." (Rousenberg Dep. Ex. 2).

{¶24} Next, Seachrist argues Rousenberg usurped CYSSR's business opportunity. He claims CYSSR had an opportunity to receive additional compensation in connection with the execution of the 2011 Leases because Profit had to make modifications to the Initial Leases so that they could be included in the Sublease. By executing the 2011 Leases without compensating CYSSR, Seachrist argues Rousenberg appropriated the benefit of that business opportunity for himself and usurped CYSSR's opportunity.

{¶25} Seachrist goes on to argue that Rousenberg breached his duty of good faith by failing to disclose his intention to enter the 2011 Leases to the other CYSSR members. Seachrist asserts that Rousenberg's silence and his back-dating of the 2011 Leases created a question of fact as to his good faith. Additionally, Seachrist argues that

an "ordinarily prudent person in a similar position" under similar circumstances, prior to transferring hundreds of thousands of dollars of his beneficiary's mineral interests to his own company would disclose the transaction to the beneficiary and obtain approval. Seachrist also argues these actions and inactions also violated Rousenberg's duty of disclosure. If CYSSR's other members knew that Rousenberg intended to sign the 2011 Leases without compensating CYSSR, they could have removed him from his position as manager as they later did.

{¶26}   The trial court found that Seachrist's argument failed as to the 2011 Leases because they were merely to correct the Initial Leases and did not affect CYSSR's rights in any material way. It also found that Seachrist's argument failed as to the Initial Leases because all five members of CYSSR adopted the Operating Agreement, which placed no requirements on the manager to obtain the members' approval in order to enter into contracts on the LLC's behalf. And there was no question that all five members understood and expected that the properties acquired by CYSSR would be leased to Profit. Moreover, all five members continued to fund the acquisitions of property and to privately invest in Profit's wells, which demonstrated their continuing approval of Rousenberg's actions. Thus, the court concluded that Rousenberg met his duty to proceed in good faith and he used the care that an ordinarily prudent person in a similar position would use. The court also found that to the extent any of Seachrist's claims were tort actions for the execution of the Initial Leases, the statute of limitations had expired.

{¶27}   Pursuant to R.C. 1705.29(B), the managing member of an LLC owes the LLC "the duties to act in good faith, in a manner the manager reasonably believes to be in or not opposed to the best interests of the company, and with the care that an ordinarily prudent person in a similar position would use under similar circumstances."

{¶28}   Pursuant to R.C. 2305.09(D), "the following causes shall be brought within four years after the cause thereof accrued * * * For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code." Thus, a tort cause of action for breach of fiduciary duty must be brought within four years after the cause of action accrued. A cause of action for breach of fiduciary duty accrues "when the act or commission constituting the breach

of fiduciary duty actually occurs." *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 2000-Ohio-2593, 743 N.E.2d 484 (7th Dist.).

**{¶29}** Rousenberg executed the last of the Initial Leases on December 17, 2008. Thus, Seachrist had to bring any claims for breach of fiduciary duty based on the execution of the Initial Leases by December 17, 2012, at the latest. He did not file this action until August 6, 2015, well past the expiration of the statute of limitations. On this basis, the trial court properly granted summary judgment on Seachrist's claims for breach of fiduciary duty relating to the execution of the Initial Leases.

**{¶30}** As to the 2011 Leases, we must look to the terms of the Operating Agreement. The Operating Agreement, adopted by all five of CYSSR's members, provides in pertinent part:

> Without limitation on the manager's powers, the manager is authorized to: enter into contracts on behalf of the company; hold and manage in the company's name real and personal property belonging to the company; execute documents on behalf of the company[.]

(Operating Agreement VI, Section (A)).

**{¶31}** Pursuant to the terms of the Operating Agreement, which all five CYSSR members approved, Rousenberg had the authority to enter into contracts, which would include leases, on behalf of CYSSR. Thus, he was acting within the scope of his authority when he entered into the Initial Leases and the 2011 Leases.

**{¶32}** Additionally, the other CYSSR members knew at the inception of the LLC that Rousenberg owned Profit and that the LLC would acquire property and lease the oil and gas rights to Profit in exchange for royalty payments. They operated under this model for many years without any objection to Rousenberg's purchasing of property or executing leases with Profit. It was not until Seachrist learned that Profit had subleased its oil and gas rights that he brought forth the allegations in this lawsuit.

**{¶33}** And as the trial court found, the 2011 Leases were merely corrective leases. They did not alter the material terms entered into between CYSSR and Profit. Per the terms of both the Initial Leases and the 2011 Leases, CYSSR would lease the exclusive oil and gas rights underlying the property to Profit in exchange for a one-eighth

Case No. 19 MO 0001 & 19 MO 0002

royalty interest in the oil and gas. The term of the leases would continue so long as oil and gas was produced. When Rousenberg executed the 2011 Leases, the Initial Leases were still being held by production. Thus, the 2011 Leases did not alter the term of the Initial Leases or the royalty payments CYSSR receives.

**{¶34}** And as to the Sublease, Profit entered into the Sublease with HG. At the time it entered into the Sublease, the oil and gas rights belonged to it, not to CYSSR. Thus, Profit was free to enter into the Sublease. Rousenberg's fiduciary duties to CYSSR would not be implicated in this transaction.

**{¶35}** Therefore, the trial court properly granted summary judgment in Rousenberg's favor on Seachrist's breach of fiduciary duty claim regarding the 2011 Leases.

**{¶36}** Second, Seachrist argues a genuine issue of material fact exists as to whether Rousenberg breached the Operating Agreement by executing the 2011 Leases and the Sublease without disclosure to, or authorization from, CYSSR's other members.

**{¶37}** The Operating Agreement provides that a "manager shall perform all duties in good faith, in a way the manager reasonably believes to be in or not opposed to the company's best interests, and with the care that an ordinarily prudent person in a similar position would use under similar circumstances." (Rousenberg Dep. Ex. 2). Thus, it repeats R.C. 1705.29(B). Seachrist argues there is no way Rousenberg could have reasonably believed that he was acting in CYSSR's best interest by executing the 2011 Leases and the Sublease, thereby depriving CYSSR of $900,000 in compensation for its mineral rights.

**{¶38}** The trial court found no merit to Seachrist's argument because the 2011 Leases "were merely corrective leases which did not affect the rights of CYSSR in any material way." It further found that the 2011 Leases did not extend the terms of the Initial Leases because the Initial Leases were already held by production under their terms.

**{¶39}** Seachrist asserts the same claim here as he did previously. But here he bases his claim on the fiduciary duty set out in the Operating Agreement instead of the duty imposed by statute. As discussed above, the Operating Agreement, which was approved by all five LLC members, gave Rousenberg the authority to enter into contracts on behalf of CYSSR without obtaining approval of the other members. Thus, he was only

exercising the power the other members gave to him when he executed the 2011 Leases. Moreover, the 2011 Leases were merely corrective leases. In no way did the 2011 Leases alter any benefits CYSSR was receiving under the Initial Leases. And CYSSR's members operated for years under the terms of the Initial Leases evidencing their approval of such operation by continuing to privately invest in the wells and acquiring more property.

{¶40} Moreover, the execution of the Sublease was not a breach of the Operating Agreement. The Sublease involved Profit leasing the rights it already owned to HG. CYSSR was not a party to the Sublease. And Rousenberg was not acting in his capacity as CYSSR's manager when Profit entered into the Sublease with HG. Thus, Rousenberg did not breach the Operating Agreement in connection with the Sublease.

{¶41} Thus, the trial court properly granted summary judgment to Rousenberg on Seachrist's claim for breach of contract.

{¶42} Third, Seachrist claims a genuine issue of material fact exists as to whether the Initial Leases are partially void and as to whether the 2011 Leases are entirely void.

{¶43} In support, Seachrist cites R.C. 1705.31(A)(1), which provides:

(A) Unless otherwise provided in the operating agreement, the following apply:

(1) No contract, action, or transaction is void or voidable with respect to a limited liability company because it is between or affects the company and one or more of its members, managers, or officers, or because it is between or affects the company and any other person in which one or more of its members, managers, or officers are members, managers, directors, trustees, or officers or have a financial or personal interest * * * if any of the following applies:

(a) The material facts as to his or their relationship or interest and as to the contract, action, or transaction *are disclosed or are known to the members or managers, and the members or managers, in good faith reasonably justified by those facts, authorize the contract, action, or*

*transaction by the affirmative vote of a majority of the disinterested members or managers * * *.*

(b) *The material facts as to his or their relationship or interest and as to the contract, action, or transaction are disclosed or are known to the members entitled to vote on the contract, action, or transaction, and the contract, action, or transaction is specifically approved at a meeting of the members* held for that purpose by the affirmative vote of the members entitled to exercise a majority of the voting power of the company held by persons not interested in the contract, action, or transaction.

(c) The contract, action, or transaction is fair to the company as of the time it is authorized or approved by the members or managers.

(Emphasis added).

**{¶44}** Seachrist argues that none of these provisions apply. Therefore, the Initial Leases and the 2011 Leases are void. He claims the disinterested members of CYSSR never voted on the Initial Leases or the 2011 Leases.

**{¶45}** The trial court found that the whole purpose of forming CYSSR was to acquire land and lease the property to Profit to allow the members to receive royalty payments. It noted that the record does not contain any evidence of specific facts to dispute this. It went on to find that over the course of several years and on separate occasions, each of CYSSR's five members made additional investments to permit CYSSR to acquire more property. All five members also further invested in the wells Profit operated. And the court found that Rousenberg used standard lease language in the Leases. For all of these reasons, the trial court determined that the Initial Leases were fair to CYSSR at the time they were approved by the manager (Rousenberg). Therefore, pursuant to R.C. 1705.31(A)(1)(c), the Initial Leases were not void. And because the 2011 Leases were merely a modification of the Initial Leases, the same applied to them.

**{¶46}** The trial court's reasoning is sound. But Seachrist's argument that the Leases are void can be more easily resolved on basic contract law. A party who accepts the benefits of a contract cannot later deny the obligations imposed on it by that same

Case No. 19 MO 0001 & 19 MO 0002

contract. *Pate v. Quick Sols., Inc.*, 10th Dist. Franklin No. 10AP-767, 2011-Ohio-3925, ¶ 40; *Dayton Securities Assoc. v. Avutu,* 105 Ohio App.3d 559, 563, 664 N.E.2d 954 (2d Dist.1995).

**{¶47}** CYSSR and its individual members have been continuously receiving the benefits of the Initial Leases and 2011 Leases in the form of the one-eighth royalty payments.  Thus, Seachrist cannot now argue that the Leases are void after he and CYSSR have been receiving the benefits of the Leases for years.

**{¶48}**  Therefore, the trial court properly granted summary judgment in favor of Rousenberg on Seachrist's request to have the Initial Leases and 2011 Leases declared void.

**{¶49}**  Fourth, Seachrist contends there is a genuine issue of material fact as to whether Rousenberg and Profit were unjustly enriched by the execution of the 2011 Leases and the Sublease.  He asserts that by unilaterally executing those leases in favor of Profit, Rousenberg conferred a benefit on Profit and on himself.  Because he claims Rousenberg was not authorized to enter the 2011 Leases or the Sublease, Seachrist argues it would be unjust to allow Rousenberg to retain the benefit he received.

**{¶50}**  To prove a claim for unjust enrichment, the plaintiff must establish:  (1) a benefit conferred by plaintiff upon defendant; (2) knowledge by defendant of the benefit; and (3) retention of the benefit by defendant under circumstances where it would be unjust to do so without payment.  *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

**{¶51}**  It is undisputed that Profit received a substantial sum for agreeing to the Sublease.  It is likewise undisputed that CYSSR did not receive any compensation resulting from Rousenberg subleasing its acreage.  The only question was whether Profit's compensation stemming from the Sublease constituted unjust enrichment.  The trial court found that it did not.

**{¶52}**  The trial court found that the execution of the 2011 Leases did not change the balance of the rights and responsibilities between CYSSR and Profit.  It further found that the 2011 Leases did not confer any new benefits on Profit or take any benefits away from CYSSR.  The court observed that, with the Initial Leases, CYSSR received the benefit of the bargain that the members expected when they formed CYSSR.  The

members received royalty payments from Profit and further invested in the wells that Profit drilled. The court found that the fact that Profit received an unexpected benefit from the Initial Leases as a result of developments that occurred years after the parties executed the Initial Leases did not establish that Profit or Rousenberg was unjustly enriched. Instead, the money received by Profit under the Sublease was an unexpected benefit of the rights it received in return for guaranteeing a royalty to CYSSR and committing to investing the capital necessary to drill and operate wells on the property.

**{¶53}** The trial court's reasoning here is well-supported. The parties entered into the Initial Leases between 2002 and 2008. Per the term of the Initial Leases, CYSSR gave Profit the exclusive right to explore for and produce oil and gas from all strata in the underlying property. In exchange for this exclusive right, Profit gave CYSSR a one-eighth royalty interest in all of the oil and gas produced. The parties operated under this agreement without controversy for several years, neither having any objections to the terms of the Initial Leases.

**{¶54}** When Rousenberg executed the 2011 Leases, the benefits to the parties did not change. CYSSR continued to receive its one-eighth royalty interest. And Profit's exclusive interest in the oil and gas continued. And when Rousenberg executed the Sublease, this was between Profit and HG. At that time, Profit owned the exclusive right to the oil and gas in question. In so owning that right, Profit was free to sublease it to another oil and gas company as long as it continued to pay CYSSR the one-eight royalty interest it was entitled to under the Initial Leases and the 2011 Leases. There has been no allegation whatsoever that CYSSR has not continued to receive its royalty payments. The fact that Profit was able to sublease its interest to earn a hefty return does not mean that this benefit was unjust. Thus, the trial court properly granted summary judgment in favor of Rousenberg on Seachrist's unjust enrichment claim.

**{¶55}** Finally, Seachrist asserts a genuine issue of material fact exists as to whether Rousenberg converted CYSSR's mineral rights. Because CYSSR owns the 238 acres of property involved here, Seachrist claims CYSSR also owns the mineral rights. When Rousenberg executed the 2011 Leases and the Sublease without disclosure to or approval from the other members, Seachrist contends, he wrongfully exerted control over CYSSR's right to receive compensation for its interest in the minerals.

Case No. 19 MO 0001 & 19 MO 0002

{¶56} The elements for conversion are: (1) the plaintiff had ownership or right of possession of the property at the time of conversion; (2) the defendant's conversion of plaintiff's property by a wrongful act or disposition; and (3) resulting damages. *Raze Internatl., Inc. v. Southeastern Equip. Co.*, 7th Dist. Jefferson No. 14 JE 0015, 2016-Ohio-5700, ¶ 49.

{¶57} As the trial court found, at the time Profit entered into the Sublease it owned the right to explore for and produce oil and gas in the Utica formation underlying CYSSR's property. Profit leased the oil and gas rights from CYSSR when the parties executed the Initial Leases. At the time Profit entered the Sublease, it still owned the oil and gas rights. Thus, CYSSR did not have the ownership or right of possession of the oil and gas rights needed to support a claim for conversion.

{¶58} Moreover, conversion only applies to personal property, not real estate. *Sandy v. Rataiczak*, 7th Dist. Noble No. 08 NO 347, 2008-Ohio-6212, ¶ 9. A lease of oil and gas rights create an interest in real estate. *Chesapeake Expl., L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 49, citing R.C. 5301.09. Consequently, a claim for conversion cannot be asserted here as this case deals with an interest in realty.

{¶59} Therefore, the trial court correctly granted summary judgment on Seachrist's conversion claim.

{¶60} Accordingly, Seachrist's sole assignment of error is without merit and is overruled.

{¶61} Rousenberg's sole assignment of error states:

THE TRIAL COURT ERRED IN DENYING APPELLEE/CROSS-APPELLANT CARL F. ROUSENBERG'S MOTION FOR SUMMARY JUDGMENT ON INDEMNIFICATION OF REASONABLE EXPENSES.

{¶62} Rousenberg argues the trial court should have granted him summary judgment on his cross-claim for indemnification. In support, he cites to R.C. 1705.32(C), which provides:

Case No. 19 MO 0001 & 19 MO 0002

To the extent that a manager * * * of a limited liability company has been successful on the merits or otherwise in defense of any action, suit, or proceeding referred to in division (A) or (B) of this section or has been successful in defense of any claim, issue, or matter in an action, suit, or proceeding referred to in those divisions, *he shall be indemnified* against expenses, including attorney's fees, that were actually and reasonably incurred by him in connection with the action, suit, or proceeding.

(Emphasis added).

**{¶63}** Rousenberg puts forth the following uncontested facts: (1) he was CYSSR's managing member; (2) he was sued for his actions in his capacity as CYSSR's managing member; (3) he requested indemnification in his answer and cross-claim; and (4) he succeeded in his defense when the trial court awarded him summary judgment. Therefore, Rousenberg argues, the trial court was required to indemnify him for all expenses he incurred as a result of this lawsuit.

**{¶64}** The trial court found that Rousenberg's indemnification claim was not yet ripe for review. It found that its summary judgment ruling "may be only the first of several decisions before this case is concluded." The court went on to note that there was no evidence before it concerning the potential amount of reimbursement. And it determined that Rousenberg would first be required to request indemnification from CYSSR, which would then have a chance to review and act upon the request. Thus, the court determined the question of indemnification was premature.

**{¶65}** Rousenberg did put forth a request for indemnification in his answer and cross-claim. And with the resolution of this appeal, the parties' claims are resolved. Thus, the issue of indemnification is ripe for the trial court's review. While R.C. 1705.32(C) provides that the LLC manager shall be indemnified after he is successful in defense of an action, the Operating Agreement here only provides that he may be indemnified.

**{¶66}** We will not review the merits of Rousenberg's indemnification claim because the trial court never ruled on his arguments. An appellate court will not rule on issues raised in summary judgment motions but not considered by the trial court. *Fullum v. Columbiana Cty. Coroner*, 7th Dist. Columbiana No. 12 CO 51, 2014-Ohio-5512, ¶ 44.

**{¶67}** Accordingly, Rousenberg's cross-assignment of error has merit to the extent that the issue is ripe for the trial court to review.

**{¶68}** For the reasons stated above, the trial court's judgment is hereby affirmed and the matter is remanded for the trial court to address the indemnification claim.

Robb, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled. Cross-Appellants' assignment of error has merit to the extent that the issue of indemnification is ripe for the trial court to review. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Further, we remand this matter to the trial court for consideration of the indemnification claim. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**